UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES R. CATRON,

      Plaintiff,

      v.                                                                          Case No. 3:25-CV-170 JD

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

**<u>OPINION AND ORDER</u>**

Plaintiff Charles Catron appeals the denial of his claims for disability insurance benefits

under Title II of the Social Security Act. His claim was rejected, leading to a review by an

Administrative Law Judge ("ALJ"), who concluded that Plaintiff was not disabled. Plaintiff then

sought review of the decision by the Appeals Council and submitted additional evidence in

support. The Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial

review in this Court. For the reasons below, the Court will affirm the Commissioner's decision.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as

the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

(7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits

if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The

threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be

"more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836,

841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the

claimant, the Court must affirm the Commissioner's decision as long as it is adequately

supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make

independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400.

In evaluating the ALJ's decision, the Court considers the entire administrative record but does

not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's

own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539

(7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the

Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and

the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is

contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ

must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580

F.3d 471, 475 (7th Cir. 2009).


**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability

under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant

must be unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C.  The ALJ's Decision[1]**

On February 22, 2024, the ALJ issued a decision finding that Plaintiff was not disabled. (ALJ's Decision, R. at 58.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Plaintiff suffered from the following severe impairments: "obesity and degenerative changes of the spine." (*Id*., R. at 42.)

Plaintiff appeared at the hearing before the ALJ without representation. The ALJ summarized his testimony, noting his claim that he was unable to work due to weakness in his legs:

> At the hearing, the claimant testified he is unable to work because his legs tend to give out and limited his ability to stand or sit for long periods due to weakness and numbness in his legs. The claimant reported weakness in his leg cause him to fall at times. The claimant alleged his symptoms have progressively gotten worse, although he has been treating with physical therapy and medication. In addition, he reported muscle spasms cause numbness in his arms and limits his ability to grip. Due to his impairments, the claimant alleged he could lift about ten pounds, stand for five minutes and sit for about twenty minutes.

(*Id*., R. at 49.) Although not included in the ALJ's summary, Plaintiff also testified that his physical therapist had recommended in May or June 2023 that he use a cane for walking. (R. at 118.)

In determining Plaintiff's residual functional capacity ("RFC"),[2] the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (ALJ's Decision,

---

[1] From a factual standpoint, Plaintiff's appeal is limited to the ALJ's rejection of a consultative examiner's opinion that Plaintiff had a limited ability to sit, stand, and walk, without seeking to supplement the record. Therefore, the Court will include only the background relevant to Plaintiff's arguments.

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

4

R. at 49.) According to the ALJ, Plaintiff "maintained the ability to perform an array of daily activities with his impairments, as [he] maintained the ability to perform his personal care needs and shop in stores." Further, he was able to work on his leisure boat, "and he maintained the ability to drive a car, which undoubtedly requires a significant level of sitting, arising from a seated position, as well as sustained concentration and multi-step decision making." (*Id.* (citation to the record omitted).) The ALJ also found that, although the record shows that Plaintiff "reported limited ability to stand or walk due to his persistent back pain" (*id.*), "[o]n examination, in the Fall 2021, . . . he presented in no acute distress with normal range of motion, normal gait, [and] intact sensation throughout . . ." (*id*). Likewise, although an MRI in late 2021 "showed mild to moderate disc degeneration with a disc protrusion . . . causing mild canal stenosis," "[t]he evidence demonstrates [Plaintiff] continued conservative treatment with no increased intensity or frequency of his treatment." (*Id.*, R. at 50.)

Nurse Practitioner Stefanie Shire performed a consultative examination on September 7, 2023. She opined that Plaintiff could sit for 100 minutes and stand for 30 minutes; and he could walk for 30 minutes before needing to rest. (R. at 478.) The ALJ deemed this opinion unpersuasive on the grounds that it is inconsistent with NP Shire's own examination and the medical record overall:

> . . . these findings appear solely based upon subjective report . . . which is not even consistent with what the claimant stated. These findings are not reflected in the clinical findings of the consultative examination summary or consistent with the clinical findings in the treatment notes, or the overall nature of the treatment notes, the [review of systems] within the treatment notes, the complaints within the treatment notes, etc.

(ALJ's Decision, R. at 54.)

The ALJ concluded that Plaintiff has the RFC to perform light work[3] with the following exertional and nonexertional limitations:

> the claimant can lift, carry, push and pull ten pounds frequently and twenty pounds occasionally. The claimant can stand and/or walk at least six hours in eight-hour workday and sit at least six hours in eight-hour workday. The claimant should not climb ropes, ladders or scaffolds, and is limited to occasional use of ramps and stairs and occasional bending, stooping, kneeling, crouching and crawling. The claimant has the ability to perform the balance required of such activities.

(*Id.*, R. at 48.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. (R. at 135.) The VE testified that the hypothetical individual could do Plaintiff's past relevant job as a salesperson, as typically performed. (*Id.*) Relying on the VE's testimony, the ALJ concluded "that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ALJ's Decision, R. at 58.) As a result, the ALJ found Plaintiff to be not disabled.

### D.  Plaintiff's Submission of Additional Evidence to the Appeals Council

Plaintiff requested that the Appeals Council review the ALJ's decision. As part of the request, he submitted additional evidence, namely, physical therapy records from Goshen Rehabilitation in Syracuse, Indiana, dated January 20, 2023, through December 8, 2023. (R. at 2.) Plaintiff points out that one of those records, dated June 19, 2023, contains two important

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

6

notations from Physical Therapist Valerie Jacobs. First, Ms. Jacobs "suggested that if [Plaintiff

continues to have weakness on the right side he may want to use a cane to help him so he doesn't

fall." (R. at 84.) Second, one of Plaintiff's stated long-term goals from the June 19 visit was to

"demonstrate [manual muscle testing] of 4+/5 for [bilateral] hips/knees to improve any weight

bearing activities." (*Id.*)

Plaintiff also notes that, sixteen days later, Ms. Jacobs observed that Plaintiff had failed

to meet his muscles strengthening goal and was poorly tolerating the treatment. (R. at 68.) In

fact, Plaintiff's treatment was "placed on hold until August 7," pending his appointment with Dr.

Wells.

Concerning Plaintiff's request to consider the additional records, the Appeals Council

provided only a boilerplate explanation: "We find this evidence does not show a reasonable

probability that it would change the outcome of the decision. We did not exhibit this evidence."

(R. at 2.) In the end, the Appeals Council denied Plaintiff's request for review. (R. at 1.)

### E.  Discussion

Plaintiff's briefs raise two arguments. First, Plaintiff contends that the Appeals Council

committed reversible error in failing to evaluate new and material evidence, that is, the physical

therapy records, which he submitted in support of his request for review of the ALJ's decision.

Second, Plaintiff faults the ALJ for failing to develop the record by not obtaining physical

therapy records despite Plaintiff's testimony that a physical therapist recommended the use of a

cane.

The Appeals Council will review a case, among other circumstances, if it "receives

additional evidence that is new, material, and relates to the period on or before the date of the

hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). On appeal to the district court, the status of the new evidence and the scope of the Court's review of the Appeals Council's denial depends on the grounds given by the Appeals Council. *See Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015). If the Appeals Council denies review because new evidence is "non-qualifying under the regulation," the Court reviews *de novo* whether the evidence was relevant under the regulations. *Id*. If the Court finds that the evidence is new, material, and time-relevant, an error of law exists, and remand may be appropriate. *Id*. (citing *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012)). But if the Appeals Council found the new evidence was relevant under the regulatory criteria but denied review because there is no reasonable probability that the additional evidence would change the outcome of the decision, then the Council's decision not to engage in plenary review is discretionary and unreviewable. *See Gregory F. v. Dudek*, No. 23 C 14140, 2025 WL 1294409, at *4 (N.D. Ill. May 5, 2025) (citing *Stepp*, 795 F.3d at 722); *see also Ali v. O'Malley*, No. 23 C 1265, 2024 WL 1254574, at *2 (N.D. Ill. Mar. 25, 2024).

Here, in commenting on the evidence from Plaintiff's physical therapy treatments, the Appeals Council merely stated that "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. at 2.) There's a split in the Seventh Circuit whether this type of statement indicates that the Appeals Council found the new evidence to be not material, which would subject its decision to a *de novo* review; or whether the statement indicates that the Appeals Council actually engaged in plenary review, which is discretionary and unreviewable. *See Musonera v. Saul*, 410 F. Supp. 3d 1055, 1060 (E.D. Wis. Oct. 15, 2019). The crux of the issue is whether the word "material" means "relevant, i.e., involves or is directly related to issues adjudicated by the ALJ, as argued by the Commissioner

8

(*see* Def.'s Br., DE 18 at 6–7 (quoting (quoting HA 01330.006(B)(2)), or if it means "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered," as held by *Stepp*, 795 F.3d at 725, which was decided before the new regulation language went into effect. District courts within the Circuit have reached differing opinions over whether review is available, under the revised regulation, when the Appeals Council uses this language in a denial order. *Id.* (citing *Colleen C. o/b/o Daniel I. v. Saul*, 2019 WL 3986077, at *2–3 (N.D. Ill. Aug. 23, 2019) (interpreting this language to mean the Appeals Council rejected the new evidence as non-qualifying and therefore *de novo* review was appropriate); *Ford v. Berryhill*, 2019 WL 11594537, at *10 (W.D. Wis. June 4, 2019) (same); *Jandt v. Saul*, 2019 WL 4464763, at *5 (E.D. Wis. Sept. 18, 2019) (finding denial using this language discretionary and unreviewable)); *see also Edward W. v. Bisignano*, No. 1:24-CV-01190-RLH, 2026 WL 497884, at *10 (C.D. Ill. Feb. 23, 2026) (finding the Appeals Council's decision unreviewable because it was based on the fourth criterion under § 416.1470(a)(5)); *Tina C. v. Saul*, 2021 WL 1851655, at *4 (N.D. Ind. May 10, 2021) (arriving at the same conclusion as *Stepp* and reaching the merits on whether the additional evidence was new and material).

In the end, the Court need not determine whether *de novo* review is available here because, even assuming it is, the additional evidence would not change the outcome of the ALJ's decision. Although there are multiple pages of physical therapy records, Plaintiff identifies only two items for consideration. First, he argues that Physical Therapist Valerie Jacobs prescribed a cane for his use to prevent falls. But Ms. Jacobs's note is much more nuanced than Plaintiff would like to believe. Ms. Jacobs states that she "suggested that if [Plaintiff] continues to have weakness on the right side he may want to use a cane to help him so he doesn't fall." (R. at 84.) Ms. Jacobs refers to the possible continuing weakness but, as the ALJ explained, the records

from the period before this note and shortly after contain multiple references to either normal extremity strength or Plaintiff's denial of any issues with extremity strength. (*See e.g.*, ALJ's Decision, R. at 55; *see also id.*. R. at 44 ("normal gait") (citing Ex. 7F); 45 ("no assistive device" and "stable gait") (referencing AR 474); R. at 47 ("Gait was normal") (citing Ex. 24F; 29F; 30F); R. at 47 ("normal gait") (citing Ex. 7F/5); R. at 49 ("maintained normal gait") (citing Ex. 7F/9); R. at 49 ("normal gait") (citing Ex. 7F/6); R. at 50 ("normal gait") (citing Ex. 29F/4, 9); R. at 475 ("Patient utilizes no assistive device. Gait is sustainable without assistive device.").) In addition, there are no other references in the medical record indicating that Plaintiff should use a cane. While a prescription for a cane is unnecessary for its relevance in the ALJ's consideration, *see Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist."), the single mention of the cane in this context and without additional support does not establish a reasonable probability of changing the outcome of Plaintiff's case. Furthermore, in considering Dr. Shire's opinion, the ALJ observed that "[t]he state agency consultants noted the consultative examination summary contained inconsistencies which is very evident considering [the overall record]." (ALJ's Decision, R. at 46.) Therefore, Plaintiff's argument that the ALJ's decision is not based on substantial evidence is not convincing.

Second, Plaintiff contends that setting the goal of achieving a manual muscle test score of 4+/5 for the hips and knees, and failing to meet this goal sixteen days later, suggests leg weakness. This claim is unfounded because none of the physical therapy records indicate Plaintiff's strength level. Besides, a rating of 4+/5 is near the top of the range, so without the

documentation of Plaintiff's actual leg strength, assuming that it was substantially lower would be only a speculation. In other words, the relevance of the goal is far from clear. And the goal does nothing to counter the numerous records showing that Plaintiff had full strength in his lower extremities. (*See e.g.*, R. at 309, 312, 315–16, 477–78, 540, 587, 592.) And to the extent that having this goal supports that Plaintiff complained of leg weakness, the ALJ was already aware of that complaint. (*See* ALJ's Decision, R. at 49 ("claimant reported weakness in his leg cause him to fall at times"). What's more, the ALJ acknowledged that during this period Plaintiff had a diagnosis of leg weakness and that Dr. Wells noted that Plaintiff reported that physical therapy did not help. (*See id*., R. at 55.) However, the ALJ found that these symptoms were temporary (*see id*. (noting that Plaintiff doing "well overall"). That is to say, Plaintiff's claim of leg weakness was not different in kind from the evidence that the ALJ had considered. *See Chrisman on behalf of NRC v. Comm'r of Soc. Sec.*, No. 1:23-CV-00046-SLC, 2024 WL 1341073, at *10 (N.D. Ind. Mar. 28, 2024), aff'd sub nom. *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618 (7th Cir. 2025) ("As such, the information provided by Ms. Capps was not different in kind from other information previously provided of record, including Ms. Easley's questionnaire.")

Plaintiff's second argument—that the ALJ committed a reversible error when he failed to obtain the physical therapy records after the hearing—is unconvincing for the same reasons. There's no doubt that an ALJ has a basic obligation to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). That duty is heightened when a claimant is unrepresented. "Where the disability benefits claimant is unassisted by counsel, the ALJ has a duty scrupulously and conscientiously to probe into, inquire of and explore for all of the relevant facts." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (internal quotations and alterations omitted). However, "a significant omission is usually required before this court will find that the

11

[Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly." *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). And an omission is significant only if it is prejudicial. *See Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246.

For the reasons already explained, Plaintiff suffered no prejudice from the ALJ's failure to obtain physical therapy records. At most, the items highlighted by Plaintiff pertain to only a brief period, well short of the twelve-month requirement for a finding of disability under the Act. More importantly, Plaintiff has not shown that the ALJ ignored the evidence of leg weakness altogether. In fact, the ALJ acknowledged such evidence and weighed it with evidence to the contrary. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (ALJs must assess evidence for and against the claimant and cannot disregard an entire line of evidence opposing their findings).

Notably, Plaintiff urges the Court to apply heightened scrutiny to the ALJ's rejection of NP Shire's opinion, citing *Beardsley v. Colvin*, 758 F.3d 834 (7th Cir. 2014), for the proposition that an ALJ's dismissal of a state agency examining doctor's opinion warrants close review and a compelling explanation. (Pl. Rep. Br., DE 14 at 13.) But this argument overlooks regulatory changes implemented in 2017 that significantly alter how opinion evidence is weighed. *See Thielen v. King*, No. 23-CV-1378-BHL, 2025 WL 415638, at *3 (E.D. Wis. Feb. 6, 2025) (noting that "Beardsley predates a 2017 change to the regulations governing an ALJ's review of the opinion evidence"). For claims filed after that date, as here, "the ALJ must not 'defer or give any specific evidentiary weight' to any medical sources." *Id.* (quoting 20 C.F.R. § 404.1520c(a)); *see also Townsend v. Kijakazi*, No. 22-CV-165, 2023 WL 3022548, at *3 (E.D. Wis. Apr. 20, 2023). Thus, contrary to Plaintiff's assertion, the fact that NP Shire conducted a physical

examination as part of her consultative evaluation does not automatically entitle her opinion to greater weight. Of course, the fact that NP Shire examined Plaintiff is relevant but must be considered along with a number of other factors. *See* 20 C.F.R. § 404.1520c(3)–(5) (relationship with the claimant—length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship; specialization; and matters such as the source's familiarity with the case evidence and understanding of disability policies). Under the revised regulations, the ALJ was required to assess NP Shire's opinion based on supportability and consistency, just as with any other medical source, but Plaintiff does not delve into any such discussion, so this argument is waived. *See Puffer v. Allstate Ins.*, 675 F.3d 709, 718 (7th Cir. 2012) ("[E]ven arguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law."); *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (perfunctory and undeveloped arguments are waived) (citation omitted).

### F.  Conclusion

For these reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 27, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court

13